No. 20,418.

THE STATE OF KANSAS, ex rel. C. L. RANDALL, as County Attorney, etc., *Appellee,* v. R. S. LITCHFIELD et al., as Receivers of the Kansas Natural Gas Company, et al. (THE OLATHE GAS COMPANY, *Appellant*).

SYLLABUS BY THE COURT.

GAS—*Olathe Gas Company—Agent and Distributor for Kansas Natural Gas Company—Rates Subject to Control of Utilities Commission.* Under the provisions of a contract herein set forth between the Olathe Gas Company, which had a franchise from the city for the sale and distribution of gas to the inhabitants of the city, and a gas company which had a trunk line through the state and furnished gas to this and other companies, to be distributed and sold by them to their patrons, and also under the agreed facts herein, it is held, that the Olathe Gas Company is acting as the agent of the trunk-line company in the distribution and sale of gas, and that it is therefore subject to the jurisdiction and control of the public utilities commission in the matter of fixing rates to be charged for gas sold to consumers.

Appeal from Johnson district court; JABEZ O. RANKIN,, judge.  Opinion filed March 11, 1916.  Affirmed.

*C. D. Walker,* of Atchison, and *W. F. Guthrie,* of Kansas: City, Mo., for the appellant.

*C. L. Randall,* of Olathe, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: A temporary restraining order was obtained, at the instance of the state, against R. S. Litchfield and John M. Landon, receivers of the Kansas Natural Gas Company, and also the Olathe Gas Company, preventing them from advancing the existing rate for gas in the city of Olathe and: in Johnson county.  The Olathe Gas Company moved to dissolve the injunction, and it was agreed by the parties that the hearing upon the motion should be treated as one on the application of the Olathe Gas Company to vacate and on the application of the plaintiff for a temporary injunction.  The motion was denied and the temporary injunction issued, and the Olathe Gas Company appeals.

The Olathe Gas Company was engaged in furnishing natural gas to the inhabitants of Olathe and a number of patrons along its line in Johnson county.  The gas furnished was partly obtained from its local fields and an additional supply was obtained from the Kansas Natural Gas Company, with whom it had entered into a contract for a portion of its supply.  The Olathe Gas Company was operated under a franchise granted by the city of Olathe on August 7, 1908, to parties whose rights. had been assigned to that company, which authorized the company to charge twenty-five cents per thousand feet of gas for one year after the franchise became effective and thereafter thirty cents per thousand.  At the time of this suit the one-year limit had expired and the company had given notice of a proposed advance in the rate.  At the time the franchise was: granted the Olathe Gas Company had been supplying its: customers from the local wells which it owned, but within a few days after the franchise was obtained the company entered into the contract with the Kansas Natural Gas Company for an additional supply of gas.  In fact, the Olathe franchise was obtained in contemplation of making the contract with the

Kansas Natural Gas Company. Since the execution of that contract the principal part of the gas has been furnished by the Kansas Natural Gas Company, and that, with the gas obtained from the local wells, has made, we are told, an adequate supply for the people of the city. The Kansas Natural Gas Company, with which the Olathe Gas Company contracted, has been engaged in transporting gas through Kansas and into Missouri. The gas which it has sold has been delivered to consumers in the communities and cities along its pipe lines by distributing companies that were operating under franchises granted by the respective municipalities. The contract with the Olathe Gas Company differs from that made with other distributing companies in that part of the supply of gas furnished the people of Olathe and the nineteen patrons outside has been obtained from its own wells. In a litigation between the state and the receivers of the Kansas Natural Gas Company as well as the distributing companies, it was determined that the power of fixing the rates to be charged consumers was vested in the public utilities commission and that application for an increase in rates must first be presented to that commission. (*The State, ex rel., v. Flannelly*, 96 Kan. 372, 152 Pac. 22.) The trial court at first granted the temporary injunction preventing the proposed increase of the rate from twenty-five cents to thirty cents per thousand, but at a later time and after a showing that the public utilities commission had made an order permitting distributing companies to charge twenty-eight cents per thousand, the court modified its former order so as to permit the Olathe Gas Company to charge the twenty-eight-cent rate as fixed by the utilities commission.

The contention of the Olathe Gas Company is that it has a franchise from the city of Olathe, a city of the second class, which permits it to charge the thirty-cent rate; that the company is principally engaged in supplying the people of the city of Olathe, since it furnishes gas to no one outside of the city except to nineteen farmers residing near its pipe line; and that the public utilities commission has no authority to fix the rate which it shall charge. On behalf of the state it is contended that the Olathe Gas Company, under its contract with the Kansas Natural Gas Company in contemplation of which the Olathe franchise was obtained, became the agent of the

Kansas Natural Gas Company and is therefore subject to the jurisdiction of the  public utilities commission.

If the contention of the state is correct the order of the district court must be upheld.  No question is raised as to the validity of the franchise obtained from the city of Olathe nor as to the purpose of any of its provisions.  It does not appear that the city has attempted to change the rates specified in the franchise and it does appear that the public utilities commission has not authorized an increase of the rate.  Neither party has offered testimony as to what would be a reasonable or compensatory rate to be charged for gas.  The controlling question in the case is whether the Olathe Gas Company, in the position which it has chosen to take, is subject to the jurisdiction of the public utilities commission so that the rate to be charged for gas can not be increased except with the concurrence and authority of that tribunal.  If it is an agency of the Kansas Natural Gas Company and its receivers in the sale and delivery of gas to the consumers, it is necessarily within the jurisdiction of the utilities commission.  In *The State, ex rel., v. Flannelly,* supra, the relation of the distributing companies to the Kansas Natural Gas Company was considered, and it was said "these distributing companies act as the agents of the Kansas Natural Gas Company in the distribution and sale of gas."  (p. 378.)  The relationship of the distributing companies to the Kansas Natural Gas Company was practically conceded in that case, but it is insisted here that the Olathe Gas Company stands in a different relation because of the peculiar provisions in its contract and under which it sells and distributes more gas than is obtained from the Kansas Natural Gas Company.  The provisions of the contract which it made with that gas company must determine the capacity in which it is acting.

In describing the parties to the contract the Kansas Natural Gas Company is designated as the "gas company" and the Olathe Gas Company as the "agent."  The relations of the parties were considered when the contract was executed, and that the franchise from the city must be considered in connection with the contract in determining the relationship follows from the recitals in the latter.  It is recited that the agent is about to become the owner of a franchise to maintain

a system for the sale and distribution of gas in the city, and has some wells about nine miles from the city from which it has been obtaining gas, but this supply has become insufficient and is expected to diminish until it is exhausted, and that therefore the Olathe Gas Company has asked for the appointment as agent of the Kansas Natural Gas Company, and that the appointment had been made. It is agreed, in effect, that the gas company would lay a branch line from its trunk line to the limits of the city and should install a reducing station there through which gas would be delivered into the system of the agent; that the gas company should deliver a volume of gas sufficient, with what the agent obtained from the local wells, to maintain a pressure not exceeding six ounces to the square inch, and if unable to furnish that pressure to all distributors it would furnish a *pro rata* share of its production. The agent of the company is specifically given "the sole and exclusive agency to distribute, market and sell its natural gas for domestic and manufacturing purposes," the agency to continue until August 7, 1928. This exclusive agency is declared to be a personal one which can not be transferred without the consent of the gas company. It is agreed that the agent shall keep up its system of pipes, mains and attachments in a condition sufficient to supply the inhabitants with gas and distribute and sell the same to the people, and that all the expense of maintaining the system and of making the sale and distribution is to be borne by the agent. It is required to charge a certain maximum rate to consumers, and a penalty is to be assessed against those who fail to pay bills promptly when due, and a minimum rate is to be fixed. The agent agrees to sell no gas for other than domestic purposes without the written consent of the gas company, and it is provided that it may sell for manufacturing purposes at prices to be fixed by the gas company, but that the right to do this may be withdrawn by the gas company absolutely or it may fix new prices and terms which likewise will be subject to withdrawal at its pleasure. The agent agrees to furnish and install meters through which it shall receive gas from its local fields, and during the months of December, January and February it is to receive all the gas which, with that obtained from the local fields, will fully supply the demand, and through each of the

other nine months to receive the same proportion sold for that month as the amount received by it from the gas company during the three preceding months of December, January and February bears to the total receipts from the gas company and local wells during those three months, but that during each of the nine months the agent shall account and settle for such proportion of gas "whether it receives the same in that month or not, the Gas Company being ready and able to deliver it." Provisions are made for measuring the gas received from the different sources of supply, and it is specified that no part of the gas furnished free by the agent to the city shall be charged against the gas company until the supply from the local fields is exhausted. It is further provided that the agent shall distribute and sell the gas delivered to it and account to the gas company for sixty-six and two-thirds per cent of the gross sales, including the minimum charges and penalties for delinquencies in payment; and seventy-five per cent of that sold for manufacturing purposes. The agent agrees to read its meters, and to keep copies of all contracts and accounts with consumers, which shall always be open for inspection by the gas company. In consideration of the exclusive agency granted by the gas company, the agent agrees that it will not distribute and sell the gas of other persons and companies. In the contract "it is expressly understood and agreed that the title to the gas which shall be delivered to the Agent by the Gas Company for sale under the terms hereof shall be and remain in the gas company until sold and delivered to the consumer," but that the agent is to accept the gas at the reducing station and bear all the risk and expense of distribution after the gas has passed that station. There are many other provisions in the contract, but these are the ones that bear most directly on the relationship of the parties.

The provisions of the contract indicate that the Olathe Gas Company, which designated itself as agent of the Kansas Natural Gas Company, intentionally entered into the relationship of agency with that company. The name given or assumed is not controlling, of course, but the intention and character of the relationship is sufficiently shown by the undertakings of the parties. The contract contains evidence both

of the appointment by the principal and its acceptance by the agent. While the agent bears the expense in the distribution and includes some of its own gas in that which it distributes through its mains, it is done under the supervision and control of the gas company; and that there might be no question of its control and of its position as principal, the contract expressly recites that the gas company shall remain the owner of the gas until its delivery to the consumers. By the contract the Olathe Gas Company has in effect made itself and its system of distribution a part of the system of the Kansas Natural Gas Company. As we have seen, the obtaining of the franchise was one of the considerations for entering into the relationship and the privileges of the franchise are made subjects of the contract. Together they show that the re-relationship is that of principal and agent rather than buyer and seller. Nothing is seen in the contract with the Olathe **Gas Company which takes it** out of the decision made in *The State, ex rel., v. Flannelly,* 96 Kan. 372, 152 Pac. 22, as to the attitude of the distributors, where it was held that the distributing companies are to be regarded as the agents of the gas company, and in the matter of rates are subject to the control of the public utilities commission.

The judgment of the district court is affirmed.